UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ALEXANDRU GANUS,**

      **Plaintiff,**

  v.

**LAURIE CONNOR,**

      **Defendant.**

**Case No. 2:24-cv-3584**
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Chelsey M. Vascura**

## OPINION AND ORDER

This matter is before the Court on a Motion to Dismiss for Failure to State a Claim filed by Defendant Laurie Connor. (ECF No. 4.) Plaintiff Alexandru Ganus opposes that Motion (ECF No. 5), and Mrs. Connor replied (ECF No. 9). For the reasons stated in this Opinion and Order, the Motion to Dismiss (ECF No. 4) is **DENIED**.

## BACKGROUND

This case arises from changes Margaret Joanne McGregor-Ganus made to documents governing her estate shortly before she passed away. Mr. Ganus, her spouse of 15 years, believes that she intended to give her condominium to him under their prenuptial agreement, but her daughter, Mrs. Connor, argues that Joanne intended to devise it to her.

    **I.**    **Factual Background**

On June 20, 2008, Alexandru Ganus married Margaret Joanne McGregor in Islamorada, Florida. (ECF No. 1, ¶ 7.) The couple married later in life, when Joanne was 81 years old and Mr. Ganus was 58. (*Id.* ¶ 8.) Before getting married, the couple executed a Prenuptial Agreement. (*Id.* ¶ 9; *see also* ECF No. 1-2.) Under the Agreement, if Joanne and Mr. Ganus were still married at the time of Joanne's death, Mr. Ganus would receive from Joanne's estate "all right, title and interest in and to her condominium (including necessary furniture), located at 87851 Old Highway

unit P-3, Coral Harbor Club, Islamorada, Monroe County, Florida." (ECF No. 1-2, PageID 20, 23.) In exchange, Mr. Ganus waived and relinquished all other spousal rights he would have otherwise received upon Joanne's death along with his right to elect against her will. (*Id.* PageID 20, 22.) The Agreement further states: "The Provisions of this paragraph shall operate as a debt against [Joanne's] estate." (*Id.* PageID 23.)

In 2015, the couple remained married and Joanne executed a Last Will and Testament in Monroe County, Florida, naming Mr. Ganus as the beneficiary of the condo, and the then-acting Trustee of the Joanne J McGregor Trust ("Trust") as the residual beneficiary. (ECF No. 1, ¶ 12; *see also* ECF No. 1-3, PageID 28.) Joanne appointed McDonald Trust Services as the personal representative of her estate. (ECF No. 1-3, PageID 29.)

Then Joanne's health began to decline. First, while the couple was on a cruise in 2015, she fell and broke two vertebrae, causing her to suffer debilitating vertigo. (ECF No. 1, ¶¶ 16–20.) Around that time, the couple split their time between Florida and Arizona. (*Id.*) But after Joanne suffered a series of additional falls in June 2020, the couple remained in Arizona full time. (*Id.* ¶¶ 21–23.) By 2021, Joanne could not drive and required full-time assistance. (*Id.* ¶¶ 24–25.)

Mr. Ganus alleges that in 2023, Mrs. Connor rekindled her relationship with Joanne. (*Id.* ¶¶ 26–30.) Mrs. Connor is Joanne's adoptive daughter from a previous relationship. (*Id.*) According to Mr. Ganus, Joanne and Mrs. Connor were not close because Mrs. Connor did not approve of Joanne and Mr. Ganus's marriage. (*Id.*) He alleges that "with knowledge of [Joanne's] declining health and vulnerability, [Mrs. Connor] began to involve herself in [Joanne's] financial, medical, and legal affairs." (*Id.* ¶ 30.)

In June 2023, Mrs. Connor and her husband Terry Connor purportedly picked Joanne up to take her to a Costco hearing aid center. (*Id.* ¶ 35.) But when Mr. Ganus returned home, Joanne

2

and her belongings were gone. (*Id.* ¶ 37.) He received a text from Terry Connor, claiming to be Joanne, saying that she decided to spend time with Mrs. Connor in Ohio. (*Id.* ¶ 38.) Mr. Ganus alleges that Joanne was then placed in a nursing home against her wishes. (*Id.* ¶ 39.)

A few months later Joanne began making changes to the legal documents governing her estate. Mr. Ganus alleges that Mrs. Connor "arranged, caused, and/or orchestrated" the execution of these documents. (*Id.* ¶¶ 40, 42.) First, Joanne executed a Durable Power of Attorney ("POA") naming Mrs. Connor as her agent in October 2023. (*Id.* ¶ 40; *see also* ECF No. 1-4.) The POA was executed in Franklin County, Ohio, but states that Joanne was a resident of Florida and that the POA was created under Florida law. (ECF No. 1-4, PageID 38.)

Then in November, Joanne executed a first codicil to her will. (ECF No. 1, ¶ 42; *see also* ECF No. 1-5.) The codicil devised the condo to Mrs. Connor, instead of Mr. Ganus. (ECF No. 1-5, PageID 41.)

Less than three months later, on February 5, 2024, Mrs. Connor in her capacity as agent under Joanne's POA, executed a Warranty Deed to Trustee ("Deed"), transferring the condo into the Trust. (ECF No. 1, ¶ 46; *see also* ECF No. 1-6.)

Joanne passed away soon after on February 24, 2024. (*Id.* ¶ 49.) At that time, although Joanne had filed a Petition for Dissolution of Marriage, Joanne and Mr. Ganus's marriage had not been formally dissolved. (*Id.* ¶¶ 45, 50.) The Arizona Court had not held a hearing on Joanne's Petition for Dissolution of Marriage. (*Id.*)

II.     **Procedural Background**

After Joanne passed away, Mrs. Connor was appointed as executor of her estate in the Probate Court in Franklin County, Ohio (Case No. 630564). (ECF No. 1, ¶ 51.) Soon after, Mr. Ganus filed his Presentation of Claim against the estate (ECF No. 1-6) and served his demand for

3

allowance of his claim under Ohio Revised Code § 2117.11 (ECF No. 1-8). (ECF No. 1, ¶¶ 52–53.) Mrs. Connor rejected his claim against the estate because the estate did not own any right, title, or interest in the condo since it was transferred to the Trust. (*Id.* ¶ 54; *see also* ECF No. 1-9.)

Mr. Ganus initiated this lawsuit in July 2024. (ECF No. 1.) He asserts his claims against Mrs. Connor in three capacities: individually, as executor of Joanne's estate, and as trustee of the Trust. (ECF No. 24, PageID 309.) The Complaint sets forth five causes of action: (1) Declaratory Judgment to Enforce Prenuptial Property Agreement (ECF No. 1, ¶¶ 55–63); (2) Declaratory Judgment to Invalidate Deed (*id.* ¶¶ 64–71); (3) Breach of Fiduciary Duty (*id.* ¶¶ 72–79); (4) Breach of Contract (*id.* ¶¶ 80–88); and (5) Fraudulent Transfer (*id.* ¶¶ 89–95). Mr. Ganus clarified that these are alternative claims to obtain either: a judgment ordering the transfer of the condo to him under the Prenuptial Agreement, a judgment finding the Deed invalid as the result of a fraudulent transfer and restoring the condo as an asset of Joanne's estate, or an award of damages for the value of the condo. (ECF No. 24, PageID 307.)

Mrs. Connor moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim for relief. (ECF No. 4.) Mr. Ganus opposes the Motion to Dismiss (ECF No. 5), and Mrs. Connor replied in support of the Motion (ECF No. 9).

Before addressing the merits of the Motion, the Court expressed concerns that it may not have subject matter jurisdiction over some or all of Mr. Ganus's claims and ordered the parties to submit additional briefing. (ECF No. 23.) Mr. Ganus filed his brief on jurisdiction (ECF No. 24) and Mrs. Connor replied (ECF No. 25).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for dismissing actions that fail to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short

4

and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (clarifying plausibility standard from *Twombly*). Further, "[a]lthough for purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

## ANALYSIS

The Court begins by addressing whether it has subject matter jurisdiction. Concluding that the probate exception does not prohibit this Court's jurisdiction, the Court conducts a brief choice-of-law analysis before turning to whether Mr. Ganus pleaded plausible causes of action related to the Prenuptial Agreement under Counts 1 and 4. Next, the Court addresses the sufficiency of Mr. Ganus's claims under Counts 2 and 5 related to the Deed transferring the condo to the Trust. Finally, the Court turns to Mr. Ganus's claim under Count 3 that Mrs. Connor breached her fiduciary duties as executor of Joanne's estate.

### I. The probate exception does not preclude this Court's jurisdiction over this action.

Concerned that the Complaint asked this Court "to elbow its way into an ongoing fight over property . . . in another court's control," the Court asked the parties to brief whether the probate exception barred subject matter jurisdiction. (ECF No. 23); *Chevalier v. Est. of Barnhart*, 803 F.3d 789, 801 (6th Cir. 2015) (internal quotations omitted). The parties agree that the probate

exception does not prohibit this Court from exercising diversity subject matter jurisdiction over this action. (*See* ECF Nos. 24, 25.) The Court agrees.

Generally, federal courts lack subject matter jurisdiction over cases concerning probate matters. *Markham v. Allen*, 326 U.S. 490, 494 (1946) ("[A] federal court has no jurisdiction to probate a will or administer an estate."). The probate exception is a judicial doctrine that prohibits a federal court "from exercising jurisdiction over certain conflicts involving property subject to a state court probate proceeding." *Osborn v. Griffin*, 865 F.3d 417, 434 (6th Cir. 2017). The exception applies in three situations when a plaintiff seeks to (1) probate a will, (2) annul a will, or (3) reach the *res* over which the state court has custody. *Chevalier*, 803 F.3d at 801 (citing *Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006)).

The probate exception does not however prevent actions regarding an *inter vivos* transfer of assets. *See Wisecarver v. Moore*, 489 F.3d 747, 751 (6th Cir. 2007) (explaining that claims for asset transfers during a testator's life "do not interfere with the *res* in the state court probate proceedings or ask a federal court to probate or annul a will"). Nor does it prevent federal courts from "entertain[ing] suits in favor of creditors, legatees and heirs." *Markham*, 326 U.S. at 494 (internal citation omitted). A claim triggers the probate exception, though, if the plaintiff asks the district court "to dispose of property in a manner inconsistent with the state probate court's distribution of assets." *Wisecarver*, 489 F.3d at 750.

Mr. Ganus's clarification that he does not seek to challenge the validity of the first codicil to Joanne's will alleviates the Court's concerns that it may lack jurisdiction under the probate exception. (ECF No. 24, PageID 310–12.) The parties agree that the condo is not in the custody of the state probate court because it was transferred to the Trust before Joanne died—*i.e.*, *inter*

6

*vivos*[1]—and thus is not part of her estate or subject to probate proceedings. (*Id.*; *see also* ECF No. 25, PageID 361–63.) And although Mrs. Connor is named in her capacity as executor of the estate, Mr. Ganus's claims focus less on her administration of the estate and more on whether the *inter vivos* transfer of the condo was proper considering the Prenuptial Agreement. (ECF No. 25, PageID 361.) Thus, Mr. Ganus's claims are more analogous to a creditor's claims against the estate. The Court is not prohibited from hearing such suits. *See Markham*, 326 U.S. at 494.

Further, Mrs. Connor does not dispute that if the estate had possession of the condo, Mr. Ganus would be entitled to it under the Prenuptial Agreement. (ECF No. 24, PageID 312; *see also* ECF No. 25, PageID 361.) Instead, she asserts she has no obligation to transfer the condo to Mr. Ganus because it is held by the Trust. (*Id.*) The parties therefore ask the Court to determine whether the transfer of the condo to the Trust before Joanne died was proper. (*See id.*) If Mr. Ganus prevails, the condo would revert to the estate and Mr. Ganus would be entitled to it. (*Id.*) The parties' dispute may be moot, and consequently the adjudication of this action would not disrupt the probate court proceedings. *See Wisecarver*, 489 F.3d at 750.

    II.    **The Court will apply Florida substantive law to claims related to the Prenuptial Agreement and Ohio substantive law to Mr. Ganus's remaining claims.**

Because the facts of this case implicate several states, the Court first analyzes which state's substantive law applies to each of Mr. Ganus's causes of action. (*See* ECF No. 1, ¶¶ 8, 21–23 (discussing that Joanne and Mr. Ganus were married in Florida and split their time between Florida and Arizona); ¶¶ 38–39 (explaining that Joanne moved to Ohio with Mrs. Connor); ¶ 45 (petitioning to dissolve her marriage in Arizona, where Mr. Ganus lives); *see also* ECF No. 1-5

---

[1] An *inter vivos* transfer involves "property that a party removes from a decedent's estate prior to his [or her] death" and "is not part of the *res* that is distributed by the probate court." *Osborn*, 865 F.3d at 435.

(executing the first codicil to her will in Ohio, but including a governing law clause stating Florida law applies).)

The parties invoked this Court's diversity jurisdiction. A federal court sitting in diversity must apply the choice-of-law rules of the forum state, which is Ohio in this case. *See Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941). Where "neither party argues that the forum state's choice-of-law rules require the [C]ourt to apply the substantive law of another state, the [C]ourt should apply the forum state's substantive law." *Wilkes Assocs. v. Hollander Indus. Corp.*, 144 F. Supp. 2d 944, 949 n.4 (S.D. Ohio 2001) (Rice, J.) (internal quotations omitted). "Ohio choice-of-law principles strongly favor upholding the chosen law of the contracting parties." *Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 715 (6th Cir. 2015) (citation omitted).

The parties refer to Florida's declaratory judgment statute under Counts 1 and 2. *See* Fla. Stat. § 86.021.[2] But generally declaratory judgment is a remedy, not an independent claim. *See Kaplan v. Univ. of Louisville*, 10 F.4th 569, 587 (6th Cir. 2021). "A request for declaratory relief must accompany the substantive claim for which declaratory judgment is sought." *Days Inn Worldwide, Inc. v. Sai Baba, Inc.*, 300 F. Supp. 2d 583, 592–93 (N.D. Ohio 2004) (citation omitted). Count 1 asks the Court to enforce the Prenuptial Agreement and order Mrs. Connor to transfer the condo to him. (ECF No. 1, ¶¶ 55–63.) Count 2 asserts a claim for undue influence against Mrs. Connor and asks the Court to invalidate the Deed. (*Id.* ¶¶ 64–71.)

The Prenuptial Agreement includes a governing law clause that states it is to be interpreted under Florida law. (ECF No. 1-2, PageID 24 ("[It] is the intention of the parties that this Agreement

---

[2] The Complaint did not indicate whether the declaratory judgment claims were brought under the Federal Declaratory Judgment Act, 22 U.S.C. § 2201(a), or under Florida law. (*See* ECF No. 1.) Upon the request of the Court, Mr. Ganus clarified that Florida law governs and the Federal Declaratory Judgment Act does not apply here. (*See* ECF No. 24, PageID 313.) The Court agrees.

8

be interpreted in accordance with the laws of the State of Florida.").) Count 1 asks the Court to enforce that Agreement and Count 4 argues that Mrs. Connor breached the Agreement. (*See* ECF No. 1.) Since Ohio law "strong[ly] favors upholding the chosen law of the contracting parties," *Wise*, 780 F.3d at 715, Florida law applies to Mr. Ganus's claims related to the Prenuptial Agreement (Counts 1 and 4).

Mr. Ganus's remaining claims sound in tort, not contract, so the governing law clause does not apply. *See AmaTech Grp. Ltd. v. Fed. Card Servs., LLC*, No. 1:21-cv-406, 2024 U.S. Dist. LEXIS 213356, at *15 (S.D. Ohio Nov. 22, 2024) (Hopkins, J.). Counts 2 and 5 assert that the Deed should be invalidated because of undue influence or fraud. Count 3 alleges Mrs. Connor breached fiduciary duties. Since neither party argues that Ohio's choice-of-law rules require this Court to apply the substantive law of another state, the Court will apply Ohio's substantive law to Mr. Ganus's remaining claims.

### III. Mr. Ganus sufficiently alleges claims for declaratory judgment and breach of the Prenuptial Agreement under Counts 1 and 4.

Mr. Ganus asserts two claims related to the Prenuptial Agreement against Mrs. Connor as executor of Joanne's estate. Under Count 1, he seeks an order from the Court enforcing the Prenuptial Agreement and ordering Mrs. Connor to transfer the condo to him. (ECF No. 1, ¶¶ 55–63.) By refusing to transfer the condo, Mr. Ganus asserts under Count 4 that Mrs. Connor breached the Prenuptial Agreement. (*Id.* ¶¶ 80–88.) Both Counts ask the Court to determine the parties' right under the Agreement. (*See id.*)

Generally, under Florida law it is inappropriate to engage in contract interpretation on a motion to dismiss. *See McKissack v. Swire Pac. Holdings, Inc.*, No. 09-22086-Civ-COOKE/B, 2011 U.S. Dist. LEXIS 36094, at *9 (S.D. Fla. Mar. 31, 2011) ("A court may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary

judgment."); *Vienneau v. Metro. Life Ins. Co.*, 548 So. 2d 856, 860 (Fla. Dist. Ct. App. 1989) ("[U]nless it clearly appears as a matter of law that a contract cannot support the action alleged, a complaint should not be dismissed[.]").

That said, if the contract terms are unambiguous, a court may properly consider a motion to dismiss for failure to state a claim. *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1312 (S.D. Fla. 2014) (citation omitted). Whether a contract is ambiguous is a question of law. *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1246 (11th Cir. 2002). To determine whether a contract is ambiguous, courts "look first at the words used on the face of the contract." *Rose v. M/V "Gulf Stream Falcon"*, 186 F.3d 1345, 1350 (11th Cir. 1999). A contract that is susceptible to two different, and reasonable, interpretations is ambiguous. *Frulla v. CRA Holdings, Inc.*, 543 F.3d 1247, 1252 (11th Cir. 2008). An interpretation is reasonable if it adheres to the terms of the contract, based on the contract's actual language evidencing the intent of the parties. *Rose*, 186 F.3d at 1350 ("[T]he actual language used in the contract is the best evidence of the intent of the parties, and thus the plain meaning of that language controls.").

Here, the Prenuptial Agreement is susceptible to two reasonable interpretations. Start with Mr. Ganus's interpretation. (*See* ECF No. 5, PageID 121–23.) He explains that under the Agreement, he and Joanne defined their "separate property" which was to "remain the sole and separate property" of the respective owner during their lives. (ECF No. 1-2, PageID 18–19.) Joanne listed the condo as her separate property. (*Id.* PageID 19.) But upon her death, if "she and [Mr. Ganus] are married, [he] shall receive from [her] estate, all right, title and interest in and to her condominium (including all necessary furniture)." (*Id.* PageID 23). In exchange, Mr. Ganus waived and relinquished his rights to Joanne's property during her lifetime and any claims to her estate, other than that provided for under the Prenuptial Agreement. (*Id.* PageID 20, 22.)

10

According to Mr. Ganus, this demonstrated his and Joanne's intent that she retain sole ownership of the condo during her life, and that upon her death it would become part of her estate. (ECF No. 5, PageID 122.) As such, Joanne had an obligation *not* to transfer the condo, and that obligation carried to Mrs. Connor as Joanne's power of attorney. (*Id.*) Mrs. Connor breached the Prenuptial Agreement by (1) transferring the condo to the Trust; (2) rejecting his claim against the estate regarding his interest in the condo; and (3) refusing to transfer the condo. (ECF No. 1, ¶¶ 85–87.) He suffered damages in the value of the condo ($1,299,208). (*Id.* ¶ 88.)

Compare that with Mrs. Connor's interpretation of the Prenuptial Agreement. She asserts that the condo was listed as Joanne's separate property of which Joanne retained the right to exercise complete dominion and control over during her lifetime. (ECF No. 4, PageID 100–05; *see also* ECF No. 1-2, PageID 17.) Included within that dominion and control was the right to sell or transfer the condo, and nothing in the Agreement prohibited Joanne from doing so. (*Id.*)

To be entitled to the condo, Mr. Ganus was required to satisfy two conditions, she says. (ECF No. 4, PageID 102–04.) First, he and Joanne must have been married when she died. (*Id.*) Second, the condo must have been owned by the estate. (*Id.*) Since he met only one condition, Mrs. Connor argues she did not breach by refusing to transfer the condo. (*Id.*)

For the purposes of the Motion to Dismiss, neither interpretation of the Prenuptial Agreement is unreasonable. Since the Agreement is susceptible to two interpretations, construing the parties' rights under the Agreement is more appropriate on a motion for summary judgment.

Mr. Ganus has also pleaded sufficient factual allegations to survive the Motion to Dismiss regarding Counts 1 and 4. Under Florida law, a declaratory judgment action may be brought to determine the construction or validity of a contract by any person whose "rights, status, or other equitable or legal relations" are affected by the contract. *See* Fla. Stat. § 86.021. Because the Court

11

cannot say as a matter of law that the Prenuptial Agreement does not support Mr. Ganus's claim, the Court will not dismiss Count 1. *See Vienneau*, 548 So. 2d at 860.

Nor will the Court dismiss Mr. Ganus's breach of contract claim under Count 4. To establish a claim for breach of contract, Mr. Ganus must prove: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages or loss from the breach. *See AmaTech Grp. Ltd.,* 2024 U.S. Dist. LEXIS 213356, at *12 (explaining that breach of contract claims are substantially similar under Florida and Ohio law). Neither party disputes that the Prenuptial Agreement was valid contract. (*See* ECF Nos. 4, 5.) Mr. Ganus argues he performed under the Agreement, but that Mrs. Connor, in her capacity as executor of Joanne's estate, breached by failing to transfer the condo to him. (ECF No. 1, ¶¶ 85–87.) As a result, he lost his interest in the value of condo. (*Id.* ¶ 88.) His factual allegations are sufficient to plausibly allege breach of contract and survive the Motion to Dismiss.

Therefore, the Motion to Dismiss (ECF No. 4) is **DENIED** as to Counts 1 and 4.

IV. **Mr. Ganus sufficiently alleged a claim for declaratory judgment and fraudulent transfer related to the Deed under Counts 2 and 5.**

Mr. Ganus brings two causes of action related to the Deed that transferred the condo to the Trust. Under Count 2, he seeks a declaratory judgment invalidating the Deed. (ECF No. 1, ¶¶ 64–71.) He argues that Mrs. Connor exercised undue influence over Joanne, who lacked capacity to make such a transfer. (*Id.*) Under Count 5, he asserts a claim for fraudulent transfer against Mrs. Connor in her capacity as executor. (*Id.* ¶¶ 89–95.) Mrs. Connor transferred the condo to the Trust without receiving an equivalent value in exchange for the transfer, he contends. (*Id.*)

Mrs. Connor counters that Mr. Ganus lacks standing to assert his claims under Count 2, and that even if he had standing, he failed to plead sufficient factual allegations to satisfy the pleading requirements under Counts 2 and 5. (ECF No. 4, PageID 105–08, 112–13.)

12

### a. Mr. Ganus has standing to bring his claims.

Article III standing is one of the many limits on the subject matter jurisdiction of the federal courts. To have standing, Mr. Ganus must have suffered an injury in fact that is fairly traceable to the challenged action and is likely to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). An injury in fact is defined as "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Mr. Ganus carries the burden of alleging facts that demonstrate each element of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Mr. Ganus alleges that he had a legally protected interest in the condo under the Prenuptial Agreement. (ECF No. 1, ¶¶ 12–14.) Mrs. Connor invaded that interest, when she, as Joanne's power of attorney, executed the Deed, Mr. Ganus argues. (*Id.* ¶¶ 67–71.) His interest in the condo under the Prenuptial Agreement operated as a debt against Joanne's estate, not the Trust. (*Id.* ¶¶ 46–48.) Since the Condo was transferred to the Trust, it did not pass to the estate upon Joanne's death, and did not trigger Mr. Ganus's rights under the Prenuptial Agreement. (*Id.* ¶ 10.) He suffered a concrete injury when he was deprived of the condo, and that injury is neither conjectural nor hypothetical. (*See id.* ¶ 88 (listing the fair market value of the condo as $1,299,208).) To redress this injury, he seeks an order from this Court invalidating the Deed. The parties agree that declaring the Deed invalid would revert the condo to Joanne's estate and trigger his rights under the Agreement. (*Id.* ¶ 71.)

Thus, Laurie's argument that Alexandru lacks standing because he "held no legal interest in the condo" is unpersuasive. (*See* ECF No. 4, PageID 106.) The Court finds that Mr. Ganus has alleged facts to establish each element of standing.

### b. Mr. Ganus plausibly alleged a claim for declaratory judgment under Count 2.

Turning now to the adequacy of Mr. Ganus's factual allegations under Count 2. Generally, a deed is "presumed to be valid and will not be set aside except upon clear and convincing evidence." *Everhart v. Everhart (In re Est. of Everhart)*, 14 N.E.3d 438, 448 (Ohio Ct. App. 2014) (citation omitted). A plaintiff can invalidate a deed upon a showing of undue influence. *Id.* Undue influence is defined as "any improper or wrongful constraint, machination, or urgency of persuasion whereby the will of a person is overpowered and he [or she] is induced to do or forbear an act which he [or she] would not do or would do if left to act freely." *Ross v. Barker*, 656 N.E.2d 363, 367 (Ohio Ct. App. 1995).

To prove undue influence by clear and convincing evidence, Mr. Ganus must show that (1) Joanne was susceptible to influence, (2) that Mrs. Connor had the opportunity to exert influence, (3) that improper influence was in fact exerted or attempted, and (4) results showing the effect of such influence. *See West v. Henry*, 184 N.E.2d 200, 202 (Ohio 1962).

Joanne was susceptible to influence "due to her declining health and diminished cognition." (ECF No. 1, ¶¶ 24–25, 66.) Mr. Ganus alleges that before Mrs. Connor moved Joanne to Ohio, Joanne "could no longer drive, and her vertigo had progressed to the point where she could no longer bathe herself." (*Id.* ¶¶ 24–25.) He provided her with constant care. (*Id.*) On a motion to dismiss, the Court must accept these factual allegations as true. *See Twombly*, 550 U.S. at 555.

Mrs. Connor also had the opportunity to exert influence over Joanne because she was in "a confidential and fiduciary relationship," "serving as [Joanne's] agent [and] power of attorney." (*Id.* ¶¶ 40, 46–47, 67–69.) "Under Ohio law, '[t]he holder of a power of attorney has a fiduciary relationship with the principal.'" *Duley v. Thompson (In re Thompson)*, 528 B.R. 721, 741 n.11 (Bankr. S.D. Ohio 2015) (citing *Cartwright v. Batner*, 15 N.E.3d 401, 417 (Ohio Ct. App. 2014)). "Such a relationship is 'one in which special confidence and trust is reposed in the integrity and

14

fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.'" *Id.* (quoting *Stone v. Davis*, 419 N.E.2d 1094, 1097–98 (Ohio 1981)).

Because Mrs. Connor was in a position of special trust and confidence as power of attorney, any influence she exerted over Joanne was inherently improper, says Mr. Ganus. (ECF No. 5, PageID 125.) Furthermore, Mrs. Connor executed the Deed transferring the condo into the Trust, of which she was the primary beneficiary. (*See* ECF No. 1-4.) The Deed is thus evidence of both the impropriety of Mrs. Connor's influence, and the result of that improper influence, argues Mr. Ganus. (*See* ECF No. 1, ¶ 70; *see also* ECF No. 5, PageID 125.)

Mrs. Connor counters that the power of attorney and the Deed were witnessed and notarized by others and thus were not the product of undue influence. (*See* ECF No. 4, PageID 106–07.) That may be true. But the Court finds that additional discovery is necessary. Mrs. Connor may make these arguments again on a motion for summary judgment. Mr. Ganus has, however, plausibly alleged that the Deed was made because of Mrs. Connor's undue influence.

The Motion to Dismiss (ECF No. 4) is therefore **DENIED** as to Count 2.

c. **Mr. Ganus plausibly alleged a claim for fraudulent transfer under Count 5.**

Mrs. Connor next moves to dismiss Mr. Ganus's claim for fraudulent transfer, arguing that his claim fails to meet the heightened pleading standard for fraud claims under Rule 9(b) of the Federal Rules of Civil Procedure. (ECF No. 4, PageID 112–13.)

Under Ohio law, a fraudulent transfer claim can be brought if the debtor made a transfer or incurred an obligation with either actual or constructive intent to defraud the creditor. *Cap City Dental Lab, LLC v. Ladd*, No. 2:15-CV-2407, 2016 U.S. Dist. LEXIS 118570, at *36–37 (S.D. Ohio Sep. 1, 2016). Mr. Ganus alleges both an actual intent claim under Ohio Revised Code § 1336.04(A)(1), as well as a constructive intent claim under § 1336.04(A)(2). (ECF No. 1, ¶¶ 93–

15

94.) A claim based on actual intent must be pleaded with particularity under Rule 9(b). *First Fin. Bank v. Fox Cap. Grp., Inc.*, 692 F. Supp. 3d 762, 770–71 (S.D. Ohio 2023) (Barrett, J.). But the heightened standard does not apply to constructive fraud claims under § 1336.04(A)(2). *Id.*

### i. Actual Intent Claim

An actual intent claim "requires that the creditor show: (1) a conveyance or incurring of a debt; (2) made with actual intent to defraud, hinder, or delay; (3) present or future creditors. *Id.* (citing Ohio law). Since actual intent is difficult to prove, the second element can be satisfied by showing certain examples, or "badges of fraud," enumerated under § 1336.04(B):

(1) Whether the transfer or obligation was to an insider;
(2) Whether the debtor retained possession or control of the property transferred after the transfer;
(3) Whether the transfer or obligation was disclosed or concealed;
(4) Whether before the transfer was made or the obligation was incurred; the debtor had been sued or threatened with suit;
(5) Whether the transfer was of substantially all of the assets of the debtor;
(6) Whether the debtor absconded;
(7) Whether the debtor removed or concealed assets;
(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;
(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Ohio Rev. Code § 1336.04(B); *see also Blood v. Nofzinger*, 834 N.E.2d 358, 369 (Ohio Ct. App. 2005). A plaintiff need not demonstrate all badges to show actual intent; as few as three is

sufficient. *United States v. Galemmo*, No. 1:13-CR-141, 2015 U.S. Dist. LEXIS 94064, at *17 (S.D. Ohio July 20, 2015) (Beckwith, J.).

Additionally, to satisfy Rule 9(b), a complaint must allege "who was involved in the alleged fraud, what was transferred, and where and how the alleged fraud took place." *First Fin. Bank*, 692 F. Supp. 3d at 771 (citation omitted). Although a degree of particularity is required, courts within this Circuit caution against dismissing fraud claims when the facts underlying the claim are within the defendant's control and when no discovery has been conducted. *Lindsey v. Collier*, No. 2:20-cv-00062, 2021 U.S. Dist. LEXIS 155783, at *18 (M.D. Tenn. Aug. 18, 2021) (citing *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988)).

Mr. Ganus alleges that the transfer of the condo into the Trust created a debt against Joanne's estate, and Mrs. Connor, as executor of Joanne's estate, is the debtor. (ECF No. 1, ¶ 91; *see also* Ohio Rev. Code § 1336.01(F) (defining debtor).) Mr. Ganus is the creditor because he has a claim against the estate. *See* Ohio Rev. Code §1336.01(C)–(D) (defining a claim and a creditor). The first and third of elements of his actual intent claim under § 1336.04(A)(1) are satisfied.

Since it is rare that a debtor admits an intent to defraud, Mr. Ganus can plead the second element with the badges of fraud, and he has done so here. The transfer was to an insider, satisfying the first badge of fraud. *See* Ohio Rev. Code §§ 1336.04(B)(1); 1336.01(G)(1)(a) (defining a relative of the debtor as an insider). Since Mrs. Connor was a beneficiary of the Trust, she retained an interest in the condo upon Joanne's death. (ECF No. 1, ¶ 47.) Therefore, the second badge of fraud is also satisfied. *See* Ohio Rev. Code § 1336.04(B)(2). She transferred the condo "without receiving any reasonably equivalent value" and "intended, believed or reasonably should have believed that the estate would incur a claim to the condo beyond its ability to pay." (ECF No. 1, ¶ 94; *see* Ohio Rev. Code § 1336.04(B)(8).) And she did so with the intent to remove or conceal

assets from Mr. Ganus. (*Id.* ¶ 93; § 1336.04(7).) Mr. Ganus has therefore plausibly alleged four badges of fraud for his actual intent claim to survive the Motion to Dismiss.

### ii. Constructive Intent Claim

Even if he failed to plead an actual intent claim, he has satisfied the requirements to state a claim for constructive intent under § 1336.04(A)(2)(B). A constructive intent claim exists "even where the debtor has no actual intent to commit fraud." *Cap City Dental Lab, LLC*, 2016 U.S. Dist. LEXIS 118570, at *38 (citing *Blood*, 834 N.E.2d at 369). Mr. Ganus "need only allege that the transfer was made without reasonably equivalent value" and that Mrs. Connor believed, or reasonably should have believed, that she was incurring debts beyond the estate's ability to pay. *Id.* (citing *In re Motorwerks, Inc.*, 371 B.R. at 295); *see also* Ohio Rev. Code § 1336.04(A)(2)(b).

As discussed above, Mr. Ganus alleges that Mrs. Connor transferred the condo to the Trust without receiving any reasonable equivalent value in exchange for the transfer. (ECF No. 1, ¶ 94.) Because of the Prenuptial Agreement, she knew or reasonably should have known that by doing so she was incurring an expense beyond the estate's ability to pay. (*Id.*) Even if Mr. Ganus cannot establish that she did so without the intent to commit fraud and deprive him of his inheritance, his constructive intent is pleaded with sufficient particularity to survive the Motion to Dismiss.

The Motion to Dismiss (ECF No. 4) is therefore **DENIED** as to Count 5.

### V. Mr. Ganus put forth sufficient factual allegations to survive the Motion to Dismiss on Count 3 for breach of fiduciary duty under Ohio law.

Mr. Ganus alleges that Mrs. Connor violated fiduciary duties she owed to Joanne as her power of attorney. (ECF No. 1, ¶¶ 72–79.) A claim of breach of fiduciary duty resembles a claim for negligence, but it involves a "heightened duty of good faith and loyalty." *Calvey v. Stifel, Nicolaus & Co.*, 850 F. App'x 344, 347 (6th Cir. 2021) (citation omitted). To prevail on a claim for breach of fiduciary duty, Mr. Ganus must show that (1) Mrs. Connor owed Joanne a fiduciary

18

duty, (2) she breached that duty, and (3) the breach proximately caused Mr. Ganus's injuries. *Id.* (citing Ohio law).

Ohio law provides that one acting as a power of attorney is an agent who must act loyally, in the principal's best interest, in good faith, and within the scope of their authority. Ohio Rev. Code § 1337.34. The agent must also attempt to preserve the principal's estate plan, to the extent known to the agent, if preserving the plan is consistent with the agent's best interest. *Id.* § 1337.34(A)(4). And the agent must "not create a conflict of interest that impairs [their] ability to act impartially in the principal's best interest." *Id.* § 1337.34(B)(2). A principal's spouse—here, Mr. Ganus—may seek court review of an agent's conduct as power of attorney. Ohio Rev. Code § 1337.36(A)(4). If an agent violates any of the duties outlined in § 1337.34, the agent may be liable "for the amount required to restore the value of the principal's property to what it would have been had the violation not occurred." *Id.* § 1337.37.

As Joanne's power of attorney, Mrs. Connor owed her a fiduciary duty and the first element is satisfied. Mr. Ganus argues that Mrs. Connor breached that duty when she transferred the condo to the Trust in violation of the Prenuptial Agreement. (ECF No. 1, ¶¶ 72–79.) He asserts that it was Joanne's intention under her estate plan to leave him the condo. (*Id.* ¶¶ 12, 14.) But after Joanne moved to Ohio with Mrs. Connor, she started making changes to her estate plan. (*Id.* ¶¶ 40–49.) She appointed Mrs. Connor as her power of attorney. (*Id.* ¶ 40.) She revised her will and executed a first codicil naming Mrs. Connor as the primary beneficiary of the condo. (*Id.* ¶ 42.) And she executed the Deed conveying the condo to the Trust. (*Id.* ¶ 46.)

Mr. Ganus challenges the sincerity of these changes. He argues that conveying the condo violated Mrs. Connor's fiduciary duties because the transfer was not in good faith to preserve Joanne's estate plan. (*Id.* ¶¶ 74, 78.) Rather, the transfer created a conflict of interest because Mrs.

19

Connor was a beneficiary of the Trust. (*Id.* ¶ 47.) Therefore, the Deed was a self-dealing transaction by a fiduciary in violation of Ohio Rev. Code § 1337, says Mr. Ganus. (*Id.*)

Mrs. Connor counters that the Deed was consistent with other changes Joanne made to her estate plans towards the end of her life. (ECF No. 4, PageID 109–110.) Since she, as power of attorney, acted consistently with Joanne's intentions, she did not breach her fiduciary duties, she argues. (*Id.*) Joanne executed the first codicil to her will, naming Mrs. Connor as the primary beneficiary of the condo, appointed Mrs. Connor as power of attorney, and filed a petition to end her marriage with Mr. Ganus. (*Id.*) Together, these actions demonstrate Joanne's intent to devise her estate to Mrs. Connor, rather than Mr. Ganus, she contends. (*Id.*)

But on a motion to dismiss, the Court need not accept Mrs. Connor's version of the facts as true. To the contrary, the Court must accept Mr. Ganus's factual allegations as true. Doing so, the Court finds that Mr. Ganus adequately alleged that Mrs. Connor violated her fiduciary duty as power of attorney, and that breach proximately harmed Mr. Ganus by depriving him of his interest in the condo.

The Motion to Dismiss (ECF No. 4) is **DENIED** as to Count 5.

## CONCLUSION

Having concluded that Mr. Ganus satisfied the pleadings standards on each claim for relief, the Motion to Dismiss filed by Defendant Laurie Connor is **DENIED**. (ECF No. 4.) This case remains open.

**IT IS SO ORDERED.**

**8/18/2025**                                            **s/Edmund A. Sargus, Jr.**
**DATE**                                                 **EDMUND A. SARGUS, JR.**
                                                                      **UNITED STATES DISTRICT JUDGE**