UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ALEXANDRU GANUS,

      **Plaintiff,**

      **v.**                     **Case Number 2:24-cv-3584**
                                 **JUDGE EDMUND A. SARGUS, JR.**
**LAURIE CONNOR,**               **Magistrate Judge Chelsey M. Vascura**

      **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff Alexandru Ganus's Motion for Partial Summary Judgment. (ECF No. 26.) Defendant Laurie Connor responded in opposition (ECF No. 35) and Mr. Ganus replied in support (ECF No. 36). For the reasons below, the Court **GRANTS IN PART** and **HOLDS IN ABEYANCE IN PART** Mr. Ganus's Motion for Partial Summary Judgment. (ECF No. 26.)

## BACKGROUND

This case arises from changes Margaret Joanne McGregor-Ganus made to documents governing her estate shortly before she passed away. Mr. Ganus, her spouse of 15 years, believes that she intended to give her condominium to him under their prenuptial agreement, but her daughter, Mrs. Connor, argues that Joanne intended to devise it to her.

### I.    Factual Background

Before getting married, Mr. Ganus and Joanne executed a Prenuptial Property Agreement ("Prenuptial Agreement") on June 17, 2008. (ECF No. 26-1.) Under the Prenuptial Agreement, if Joanne and Mr. Ganus were married at the time of Joanne's death, Mr. Ganus would receive from Joanne's estate "all right, title and interest in and to her condominium (including necessary

furniture), located at 87851 Old Highway Unit P-3, Coral Harbor Club, Islamorada, Monroe County, Florida" (the "Condo"). (*Id.* PageID 392.) The Prenuptial Agreement explains that this provision operates "as a debt against Joanne's estate." (*Id.*) In exchange, Mr. Ganus waived and relinquished the spousal rights he would have otherwise received upon Joanne's death along with his right to elect against her will. (*Id.* PageID 391.) The Prenuptial Agreement contemplates that each party will "execute and deliver any instrument, furnish any information, or perform any other act reasonably necessary to carry out the provisions of this Agreement." (*Id.* PageID 394.) Finally, "[a]ll provisions of this Agreement shall be binding upon the parties hereto, their respective heirs, personal representatives, executors, administrators and/or assigns." (*Id.* PageID 393.)

In 2015, the couple remained married and Joanne executed a Last Will and Testament in Monroe County, Florida, devising the Condo to Mr. Ganus. (ECF No. 26-2.) In 2023, Joanne began making changes to legal documents governing her estate. Joanne executed two Durable Power of Attorney documents—one in July 2023 and one in October 2023—both of which named Mrs. Connor, her daughter, as her agent. (ECF Nos. 26-5, 26-6.) Then, in November 2023, Joanne executed a first codicil to her will, which devised the Condo to Mrs. Connor, instead of Mr. Ganus. (ECF No. 26-7.) Less than three months later, in February 2024, Mrs. Connor, in her capacity as agent under Joanne's Power of Attorney, executed a Warranty Deed to Trustee, transferring the Condo to the Joanne J. McGregor Revocable Trust ("Trust"). (ECF No. 26-8.)

Joanne passed away soon after on February 24, 2024. (*See* ECF No. 26-9, PageID 448.) Although Joanne had filed a petition for dissolution of marriage on December 11, 2023, the

petition did not have any hearings before her death and did not result in a judgment of dissolution. (*Id.*)

## II.     Procedural Background

After Joanne passed away, Mrs. Connor was appointed as executor of her estate in the Probate Court in Franklin County, Ohio (Case No. 630564). (*See* ECF No. 26-10.) In May 2024, Mr. Ganus filed his Presentation of Claim related to the Condo against the estate. (ECF No. 26-9.) Mrs. Connor rejected his claim on the grounds that the estate did not own any right, title, or interest in the Condo because it had been transferred to the Trust. (ECF No. 26-10.)

Mr. Ganus initiated this lawsuit in July 2024. (ECF No. 1.) He asserts claims against Mrs. Connor in three capacities: individually, as executor of Joanne's estate, and as trustee of the Trust. (*Id.* PageID 1.) The Complaint sets forth five causes of action: (1) Declaratory Judgment to Enforce Prenuptial Property Agreement (*id.* ¶¶ 55–63); (2) Declaratory Judgment to Invalidate Deed (*id.* ¶¶ 64–71); (3) Breach of Fiduciary Duty (*id.* ¶¶ 72–79); (4) Breach of Contract (*id.* ¶¶ 80–88); and (5) Fraudulent Transfer (*id.* ¶¶ 89–95). Earlier in this litigation, Mrs. Connor moved to dismiss the Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 4), and the Court denied that Motion (ECF No. 29).

Now, Mr. Ganus moves for partial summary judgment on Counts 1 and 4. (ECF No. 26.) Mr. Ganus asks the Court to grant his Motion for Partial Summary Judgment and order Mrs. Connor to transfer the Condo to him. (*Id.* PageID 381.) Mrs. Connor responded in opposition (ECF No. 35) and Mr. Ganus replied in support (ECF No. 36).

**LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating that the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citing Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead a rational trier of fact to find for the nonmoving party).

**ANALYSIS**

I. **Applicable Law**

Mr. Ganus moves for summary judgment on Count 1, his claim for declaratory judgment to enforce the Prenuptial Agreement, and Count 4, his claim for breach of contract. (ECF No.

4

26.) As the Court explained in its prior decision denying Mrs. Connor's Motion to Dismiss, Florida law applies to these claims.[1] (ECF No. 29, PageID 490–92.)

The Parties invoked this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. (ECF No. 1, ¶ 4.) A federal court sitting in diversity must apply the choice-of-law rules of the forum state, which is Ohio in this case. *See Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941). "Ohio choice-of-law principles strongly favor upholding the chosen law of the contracting parties." *Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 715 (6th Cir. 2015) (quoting *Tele-Save Merch. Co. v. Consumers Distrib. Co., Ltd.*, 814 F.2d 1120, 1122 (6th Cir. 1987)).

The Prenuptial Agreement includes a governing law clause that states it is to be interpreted under Florida law. (ECF No. 26-1, PageID 393 ("It is the intention of the parties that this Prenuptial Agreement be interpreted in accordance with the laws of the State of Florida.").) As such, Florida law applies to Mr. Ganus's claims related to the Prenuptial Agreement, which are Counts 1 and 4. (ECF No. 29, PageID 492.) Because Mr. Ganus moves for partial summary judgment on Counts 1 and 4, the Court applies Florida law herein.

In Count 4, Mr. Ganus claims that Mrs. Connor breached the Prenuptial Agreement by refusing to transfer the Condo to him, and in Count 1, Mr. Ganus asks the Court to enforce the Prenuptial Agreement and order Mrs. Connor to transfer the Condo to him. (ECF No. 1, ¶¶ 55– 63, 80–88.) The Court addresses the Parties' arguments related to Count 4 first because whether Mr. Ganus is entitled to relief under Count 1 depends on whether he can succeed on his breach of contract claim under Count 4.

---

[1] The Complaint did not indicate whether Count 1 was brought under the federal Declaratory Judgment Act (22 U.S.C. § 2201(a)) or Florida law, so, upon request of the Court, Mr. Ganus clarified that Florida law governs. (ECF No. 29, PageID 491, n.2 (citing ECF No. 24, PageID 313).)

5

## II. Count 4 – Breach of Contract

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009).

As to the first element, the Parties do not dispute that the Prenuptial Agreement is a valid contract. (ECF No. 26, PageID 378; *see generally* ECF No. 35.) Indeed, Mr. Ganus and Joanne were the contracting parties, and the Prenuptial Agreement expressly provides that all provisions "shall be binding upon the parties hereto, their respective heirs, personal representatives, executors, administrators, and/or assigns." (ECF No. 26-1, PageID 393, 396.) Mrs. Connor is the executor of Joanne's estate and "an antenuptial agreement is a valid contract and is enforceable against the estate." *Gridley v. Galego*, 698 So. 2d 273, 275 (Fla. Ct. App. 1997); (ECF No. 26-10).

As to the second element, Mr. Ganus argues that Mrs. Connor committed a material breach by rejecting his claim to the Condo in her capacity as executor and refusing to execute the necessary documents to transfer the Condo to him. (ECF No. 26, PageID 379–80.) Mrs. Connor responds that her denial of Mr. Ganus's claim did not violate the Prenuptial Agreement because she had no obligation to transfer the Condo. (ECF No. 35, PageID 532.)

As to the third element, Mr. Ganus claims that he suffered injury and damage to his inheritance due to Mrs. Connor's breach. (ECF No. 26, PageID 380–81.) Mrs. Connor does not directly address damages, presumably because she argues no breach occurred. (*See generally* ECF No. 35.)

So, the Parties' dispute centers on the second element: whether Mrs. Connor materially breached the Prenuptial Agreement.

Under Florida law, prenuptial agreements are construed and interpreted in the same manner as other contracts. *Ledea-Genaro v. Genaro*, 963 So. 2d 749, 752 (Fla. Ct. App. 2007). An ambiguous contract creates an issue of fact that precludes the grant of summary judgment. *See John M. Floyd & Assocs., Inc. v. First Fla. Credit Union*, 443 F. App'x 396, 398 (11th Cir. 2011) (quoting *Talbott v. First Bank Fla.*, 59 So. 3d 243, 245 (Fla. Ct. App. 2011)). Interpreting an unambiguous contract, however, is a question of law which can be resolved on summary judgment. *Id.* (quoting *PNC Bank, N.A. v. Progressive Emp. Servs. II*, 55 So. 3d 655, 658 (Fla. Ct. App. 2011)). Contracts are interpreted according to their plain meaning. *Id.* at 399.

Whether a contract is ambiguous is a question of law to be determined by the court. *Talbott*, 59 So. 3d at 245. "A contract is ambiguous where it is 'susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract.'" *John M. Floyd & Assocs.*, 443 F. App'x at 399 (quoting *Frulla v. CRA Holdings, Inc.*, 543 F.3d 1247, 1252 (11th Cir. 2008)). The critical inquiry is whether the two interpretations are reasonable. *See id.* Where the contract "is susceptible to only one reasonable interpretation, summary judgment appropriately may be awarded." *Wholesale Telecom Corp. v. ITC Deltacom Commc'ns, Inc.*, 176 F. App'x 76, 79 (11th Cir. 2006).

The Parties offer competing interpretations of the Prenuptial Agreement on two issues. The Court addresses each in turn.

### A.      Receiving the Condo from Joanne's Estate

First, the Parties have different views on whether Mr. Ganus is entitled to receive the Condo under the Prenuptial Agreement given that the Condo was not held by Joanne's estate at the time of Joanne's death. Mr. Ganus posits that the contractual language requires Mrs. Connor to convey the Condo back to Joanne's estate and then transfer it to him, arguing that Mrs.

7

Connor's refusal to do so constitutes a material breach. (ECF No. 26, PageID 379–80.) Mr. Ganus relies primarily on two provisions in the Prenuptial Agreement as support for his position. First, the Prenuptial Agreement provides: "Upon the death of Joanne, provided that she and Alexandru are married, Alexandru shall receive from Joanne's estate, all right, title and interest in and to her condominium (including necessary furniture), located at 87851 Old Highway, Unit P-3, Coral Harbor Club, Islamorada, Monroe County, Florida, free and clear of all mortgages or liens incurred by Joanne." (*Id.* PageID 372; ECF No. 26-1, PageID 392.) Second, the Prenuptial Agreement states: "Each party agrees that, at the request of the other party, he or she will execute and deliver any instrument, furnish any information, or perform any other act reasonably necessary to carry out the provisions of this Agreement including, but not limited to, the vesting of title and estate on the appropriate party as herein provided." (ECF No. 26, PageID 372, 379; ECF No. 26-1, PageID 394.) Reading these provisions together, Mr. Ganus contends that Mrs. Connor was contractually required to convey the Condo to the estate and transfer it to him when he submitted a claim for the Condo to Mrs. Connor as executor of Joanne's estate.

Mrs. Connor, on the other hand, believes that she has no obligation to transfer the Condo. Mrs. Connor emphasizes that the Prenuptial Agreement states Mr. Ganus shall receive the Condo "from Joanne's estate" and argues that because the Condo was not an asset of Joanne's estate when Joanne died or when Mr. Ganus submitted his claim, he is not entitled to it. (ECF No. 35, PageID 532, 539.) Mrs. Connor also states that the earlier transfer of the Condo from the estate to the Trust is permissible under the Prenuptial Agreement because the contract lists the Condo as Joanne's separate property and contemplates the conversion or disposal of separate property. (*Id.* PageID 536–37.) In reply, Mr. Ganus argues that Mrs. Connor's interpretation of the Prenuptial Agreement is illusory and unconscionable because it prevents Mr. Ganus from

8

receiving the Condo even though he gave up his rights as the surviving spouse in exchange for the Condo. (ECF No. 36, PageID 549–51.)

"[A]n interpretation of a contract which gives a reasonable, lawful and effective meaning to all of the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." *Twin City Fire Ins. Co. v. Leonel R. Plasencia, P.A.*, No. 19-80021-CV, 2019 WL 7899222, at *3 (S.D. Fla. Sep. 30, 2019) (quoting *Herian v. Se. Bank, N.A.*, 564 So. 2d 213, 214 (Fla. Ct. App. 1990)). Here, if the Court were to read the Prenuptial Agreement as Mrs. Connor suggests, Joanne's estate would have no obligation to transfer the Condo to Mr. Ganus. Yet the contract explicitly provides that Mr. Ganus "shall receive from Joanne's estate, all right, title and interest in and to her condominium." (ECF No. 26-1, PageID 392.) It is not reasonable to interpret the contract in a way that renders this language meaningless.

In addition, under Mrs. Connor's interpretation, so long as the Condo is not held by Joanne's estate, Mr. Ganus will not receive his sole inheritance upon Joanne's death. Mr. Ganus waived his right to Joanne's estate, property, assets, and other effects except as provided for in the Prenuptial Agreement, which states that Mr. Ganus shall receive the Condo from Joanne's estate. (ECF No. 26-1, PageID 391–92.) Thus, Mrs. Connor's interpretation results in Mr. Ganus relinquishing his rights to inheritance but receiving nothing in return. This interpretation leads to "an absurd conclusion," so it "must be abandoned for one more consistent with reason and probability." *White v. Fort Myers Beach Fire Control Dist.*, 302 So. 3d 1064, 1071 (Fla. Ct. App. 2020) (quoting *Hunt v. First Nat'l Bank of Tampa*, 381 So. 2d 1194, 1197 (Fla. Ct. App. 1980)).

**B.     Marriage Status at the Time of Joanne's Death**

Second, the Parties interpret the Prenuptial Agreement differently given the status of Joanne and Mr. Ganus's marriage at the time of Joanne's death. Under the Prenuptial

9

Agreement, if "the marriage between Joanne and Alexandru is dissolved at or prior to Joanne's death," the paragraph providing the Condo to Mr. Ganus "shall be rendered null and void and Joanne's condominium shall become a part of her estate and pass pursuant to any testamentary instrument executed by Joanne and in effect at the time of her death, and, if no such instrument exists, pursuant to the laws of intestacy." (ECF No. 26-1, PageID 392.)

Mrs. Connor argues that Mr. Ganus is not entitled to the Condo because Joanne's petition for dissolution of marriage was pending at the time of Joanne's death. (ECF No. 35, PageID 534–35.) Mr. Ganus replies that the marriage did not dissolve at Joanne's death because when a dissolution petition is pending at the time of death, the dissolution action is terminated, not the marriage. (ECF No. 36, PageID 551–52.) Mr. Ganus also says that Joanne's death certificate and next of kin form list Mr. Ganus as her surviving spouse. (*Id.* at PageID 552.)

Because Joanne's petition was pending in Arizona, Mrs. Connor relies on *Van Emmerik v. Colosi*, 972 P.2d 1034 (Ariz. Ct. App. 1998), as support for her position. (ECF No. 35, PageID 535.) Even still, in *Van Emmerik*, the court explained that "a dissolution action necessarily abates with the death of a spouse."[2] 972 P.2d at 1035. In other words, the dissolution action terminates when one spouse dies, but the couple remains married. *Cardinal & Stachel, P.C. v. Curtiss*, 238 P.3d 649, 653 n.6 (Ariz. Ct. App. 2010) (explaining that one spouse "died before the dissolution of her marriage to [the other spouse] was final, so the two were still married at the time of her death"). As such, Joanne's dissolution action ended when she died, so she was married to Mr. Ganus at the time of her death.

---

[2] The same is true under Florida law. *Marlowe v. Brown*, 944 So. 2d 1036, 1039 (Fla. Ct. App. 2006) ("The dissolution of marriage action terminated with the death of the [spouse].").

Further, Mrs. Connor's interpretation of the Prenuptial Agreement adds words to the contract that do not exist in it. Mrs. Connor argues that "the parties contracted for the possibility that Joanne would die while a petition for dissolution was pending." (ECF No. 35, PageID 535.) The Prenuptial Agreement provides that if "the marriage between Joanne and Alexandru is dissolved at . . . Joanne's death, this paragraph shall be rendered null and void." (ECF No. 26-1, PageID 392.) The contract does not say that the paragraph will be null and void if a petition for marriage dissolution is pending at Joanne's death. Courts do not rewrite contracts—they enforce them as written. *Affordable Hous. Grp., Inc. v. Fla. Hous. Affordability, Inc.*, 159 F.4th 860, 866 (11th Cir. 2025); *John M. Floyd & Assocs.*, 443 F. App'x at 399 ("An interpretation is not reasonable if it requires rewriting the contract to add language that a party omitted and in order to impose an obligation on the other party that was not in the original bargain.").

### C.      Interpreting the Prenuptial Agreement

For the reasons above, Mrs. Connor's interpretations of the Prenuptial Agreement are unreasonable. As such, the Prenuptial Agreement is unambiguous, and the Court is left to enforce the contract according to its plain meaning. The Prenuptial Agreement provides that Mr. Ganus shall receive from Joanne's estate, all right, title, and interest in and to the Condo (including necessary furniture), and requires each party to execute and deliver any instrument, furnish any information, or perform any other act reasonably necessary to carry out the provisions of the contract at the request of the other party. (ECF No. 26-1, PageID 392, 394.) It is undisputed that Mr. Ganus submitted a request to Mrs. Connor, in her capacity as executor of Joanne's estate, to transfer the Condo to him, and Mrs. Connor refused. (ECF Nos. 26-9, 26-10). By refusing, Mrs. Connor breached the Prenuptial Agreement. Therefore, the Court **GRANTS** Mr. Ganus's Motion for Partial Summary Judgment as to Count 4, for breach of contract.

11

**III.     Count 1 – Declaratory Judgment to Enforce Prenuptial Property Agreement**

Through Count 1 of the Complaint, Mr. Ganus seeks an Order requiring Mrs. Connor, in her capacity as executor of Joanne's estate, "to comply with her obligation under the Prenuptial Agreement and transfer the Condo (including necessary furniture) and/or the value thereof to Plaintiff." (ECF No. 1, ¶¶ 55–63.) In his Motion for Partial Summary Judgment, Mr. Ganus says the circumstances of this case warrant ordering specific performance and asks the Court to compel Mrs. Connor to transfer title to Condo to him. (ECF No. 26, PageID 381.) In response, Mrs. Connor states that she views Counts 1 and 4 "to be almost entirely overlapping" and addresses them together by arguing that summary judgment is not warranted because she did not breach the Prenuptial Agreement. (ECF No. 35, PageID 531.)

Under Florida law, specific performance is a remedy for breach of contract, not a stand-alone cause of action. *Glob. Digit. Sols., Inc. v. Grupo Rontan Electro Metalurgica, S.A.*, No. 18-80106-Civ, 2019 WL 8323955, at *2 (S.D. Fla. Nov. 27, 2019); *see also Ocean Commc'ns, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. Ct. App. 2007) (recognizing "three distinct remedies for breach of contract: damages, restitution, and specific performance"). Moreover, specific performance is an equitable remedy that is an alternative to monetary damages. *Kruse v. Mass. Mut. Life Ins. Co.*, No. 17-cv-61115, 2017 WL 3494334, at *8 (S.D. Fla. Aug. 15, 2017). To obtain specific performance, the plaintiff must be entitled to it, there must be no adequate remedy at law, and the judge must believe that justice requires it. *All Seasons Condo. Ass'n, Inc. v. Patrician Hotel, LLC*, 274 So. 3d 438, 445–46 (Fla. Ct. App. 2019).

In his Complaint, Mr. Ganus appears to seek both monetary damages and specific performance for Mrs. Connor's breach of contract. Under Count 1, Mr. Ganus asks the Court to order Mrs. Connor to "transfer the Condo (including necessary furniture) and/or the value

12

thereof." (ECF No. 1, ¶ 63.) Under Count 4, Mr. Ganus alleges that he has suffered "approximately $1,299,208" in damages from Mrs. Connor's breach of contract. (*Id.* ¶ 88.) In his Prayer for Relief, Mr. Ganus requests a judgment finding Mrs. Connor liable for breaching the Prenuptial Agreement and awarding him compensatory damages. (*Id.* at PageID 13.)

Given the legal principles related to specific performance outlined above, the Court requires clarification from Mr. Ganus on the relief he seeks for Mrs. Connor's breach of contract. The Court **ORDERS** Mr. Ganus to file a supplemental brief **within 30 days** from the date of this Order addressing (1) whether his request for summary judgment on Count 1 should be construed as a request for the remedy of specific performance in connection with Count 4, (2) why he is entitled to specific performance, and (3) whether he seeks specific performance or monetary damages as relief for Mrs. Connor's breach of contract. Any response brief that Mrs. Connor intends to file is due within **15 days** of Mr. Ganus's supplemental brief. Any reply brief that Mr. Ganus intends to file is due within **7 days** of Mrs. Connor's response brief. Meanwhile, the Court **HOLDS IN ABEYANCE** Mr. Ganus's request for summary judgment on Count 1.

## CONCLUSION

For the reasons above, the Court **GRANTS IN PART** and **HOLDS IN ABEYANCE IN PART** (ECF No. 26) Plaintiff Alexandru Ganus's Motion for Partial Summary Judgment. The Court grants summary judgment on Count 4 and holds in abeyance Count 1. The Court **ORDERS** Mr. Ganus to file a supplemental brief **within 30 days** from the date of this Order explaining the relief he seeks for Mrs. Connor's breach of contract. Mrs. Connor has **15 days** from the date of filing of the supplemental brief to respond in opposition, and Mr. Ganus has **7 days** to reply.

This case remains open.

13

**IT IS SO ORDERED.**

<u>3/18/2026</u>                                              <u>s/Edmund A. Sargus, Jr.</u>
**DATE**                                                    **EDMUND A. SARGUS, JR.**
                                                            **UNITED STATES DISTRICT JUDGE**

14